IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NANANETTE NEDD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-02322-K-BT |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Dallas Independent School District's (DISD or the "District") Partial Motion to Dismiss (ECF No. 20). For the following reasons, the Court should GRANT the District's Motion and DISMISS all of Plaintiff Nananette Nedd's claims under the Texas Whistleblower Act, Title VII, and Chapter 21 of the Texas Labor Code, as well as her retaliation claim under the Age Discrimination in Employment Act.

## Background

This *pro se* civil action arises out of Nedd's termination from her employment as a DISD bus driver in February of 2022. The District terminated Nedd following two instances of alleged misconduct involving Nedd and DISD students and employees who were not complying with the District's COVID-19 mask protocol. *See* Def.'s App. (ECF No. 21).[1]

_____

[1] Nedd attached a partial version of the termination letter to her original

Specifically, the District found, Nedd confronted a student and the student's mother, on October 21, 2021, when the student attempted to board a District school bus while not wearing a face mask properly. Nedd "moved [her] hand to stop the student from boarding, which caused the student to stumble down the stairs and off the bus." *Id.* at 2. Nedd then "engaged in a verbal altercation with a parent and closed the door in front of the parent while driving away with the bus's back door still open and unsecured." *Id.* Nedd drove with the door open for approximately three minutes while students were on board. *Id.* Then, on November 9, 2021, Nedd refused to transport students back to school after a football game. *See* Def.'s App. (ECF No. 21); Am. Compl. ¶ 32 (ECF No. 16). According to the District, after Nedd drove the students and faculty to the game, she "returned [her] bus to the Service Center and refused to complete the second portion, stating that the students were not wearing masks." Def.'s App. 3 (ECF No. 21).

Nedd disputes the District's findings. According to Nedd, in the October incident, the student "refused to put his mask on and became confrontational with [her]." Am. Compl. ¶¶ 16-18 (ECF No. 16). Further,

---

Complaint, she refers to the letter in her Amended Complaint, and the letter is central to her claims. Accordingly, the Court properly considers the termination letter in its Rule 12(b)(6) analysis. *See Smith v. Buffalo Wild Wings,* 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)) (Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the [motion to dismiss] that are central to the claim and referenced by the complaint.").

"[t]he student's mother approached [Nedd] in a very aggressive manner and threatened her, ready to fight." *Id.* at ¶ 22. Accordingly, she drove away before securing the back door "for the safety of herself and the other passengers on board." *Id.* at ¶ 23. Regarding the November incident, Nedd claims that students and coaches attempted to board the bus without wearing face coverings and that, "[a]s the students and coaches unloaded the bus at the destination, students were very disrespectful and rude." Am. Compl. ¶ 29 (ECF No. 16). Nedd "advised [her supervisor] that she will not be transporting [the students and coaches] back to the school due to the disrespect and rudeness." *Id.* at ¶ 32.

Nedd submitted internal reports to the District concerning both incidents. In her reports, she portrayed her general disapproval of her supervisor's handling of the incidents and the District's lack of compliance with its own COVID-19 policy. Specifically, she completed two "Dallas ISD School Bus Safety Reports"—one on October 22, 2021, regarding the October 21st incident, and the other on November 10, 2021, regarding the November 9th incident. *See* Am. Compl., Ex. B (ECF No. 16) (October 21 Safety Report); Am. Compl., Ex. E (ECF No. 16) (November 9 Safety Report). Additionally, Nedd sent an email to a District supervisor on November 9, 2021, explaining her perspective on the November 9th incident. *See* Am. Compl., Ex. F (ECF No. 16)

The District placed Nedd on administrative leave on November 16,

2021. Am. Compl. ¶ 35, Ex. G (ECF No. 16). Thereafter, she sent another email to a District supervisor on November 22, 2021. *Id*. at Ex. J. She again explained her perspective on the two incidents and complained about management handling the incidents in an "unprofessional" manner. *Id*. She asserted it was "obvious without a doubt that she was suspended because of the document that I submitted to my director and her superiors." *Id*. She claimed that she was being unfairly retaliated against for reporting her concerns. *Id*.

On January 27, 2022, a Human Resources coordinator for the District called Nedd to communicate the District's intention to terminate her. Am. Compl. ¶ 37 (ECF No. 16). The coordinator also advised Nedd of her option to resign in lieu of termination. *Id*. Nedd did not resign; instead, the District terminated her on February 15, 2021. *See* Def.'s App. (ECF No. 21) (termination letter). Nedd alleges she was "formally terminated" on February 16, 2021, presumably the date on which she received the District's termination letter. Am. Compl. ¶ 3 (ECF No. 16).

Nedd filed a grievance with the District alleging wrongful termination. *Id*. ¶ 46. She sent a letter to the District's Board of Trustees reiterating her concerns regarding the District's compliance with its internal COVID-19 procedures and the lack of support from management towards her efforts to enforce the policies. *Id*. at Ex. N. She explained why she felt her actions during the incidents were justified, including that she was forced to drive the

bus with the back door open because she "feared for my life and the possible life of others on the bus." *Id.* The District denied her request for reinstatement.

Nedd filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission Civil Rights Division (TWC) on August 29, 2022. Am. Compl. ¶ 50 (ECF No. 16); Original Compl. 5 (ECF No. 3). In her charge, she alleges that prior to her termination, she had "successfully performed the duties of [her] position" and that her "actions on October 21 and November 9 were solely to keep everyone safe on the bus[.]" Ultimately, she asserts that she was discriminated against due to her race—African American—in violation of Title VII of the Civil Rights Act of 1964, and discriminated against due to her age—55—in violation of the Age Discrimination in Employment Act of 1967. The EEOC issued Nedd's Determination of Charge and Notice of Right to Sue letter on September 8, 2022. Am. Compl., Ex. O (ECF No. 16).

Nedd initiated this lawsuit the next month, on October 17, 2022. *See* Original Compl. (ECF No. 3). The District filed a Motion to Dismiss for failure to state a claim (ECF No. 10), and Nedd responded with her First Amended Complaint, filed on March 6, 2023. Am. Compl. (ECF No. 16). Liberally construing her Amended Complaint, Nedd asserts claims of retaliation under the Texas Whistleblower Act (TWA), age-based discrimination and retaliation under the Age Discrimination in Employment

Act (ADEA), race-based discrimination and retaliation under Chapter 21 of the Texas Labor Code (the "Texas Commission on Human Rights Act" or TCHRA), and race-based discrimination and retaliation under Title VII. In the District's Partial Motion to Dismiss, it asks the Court to dismiss each of Nedd's retaliation claims and her discrimination claims under TCHRA, TWA, and Title VII. The District does not argue that Nedd's discrimination claims under the ADEA should be dismissed.[2]

Nedd filed two Responses to the District's Partial Motion to Dismiss. *See* ECF Nos. 24 & 25.[3] But Nedd does not substantively address any of the District's arguments for dismissal in either of her Responses. Instead, she states in conclusory fashion that she "do[es] not accept or agree with [the District's] decision to plea for dismissal[.]" Resp. 1 (ECF No. 25). Additionally, she attaches various documents to her Responses, including: 1) her Notice of Right to Sue letter issued by the EEOC on September 8, 2022; 2) a copy of her Charge of Discrimination; 3) copies of email correspondence with the District denying Nedd's request for a Board of Trustee hearing transcript; 4) copies of email and telephone correspondence

---

[2] In its first Motion to Dismiss, directed at Nedd's original Complaint, the District sought dismissal of Nedd's ADEA discrimination claim. *See* Mot. Dismiss (ECF No. 10) ("[S]he does not allege any facts regarding the age or race of any of those individuals or that any alleged difference in treatment was based on age or race[.]"). Nedd's Amended Complaint contains many allegations not included in her original Complaint, including that she was treated less favorably than multiple "younger" employees. *See, e.g.*, Am Compl. ¶ 2.

[3] The second Response is identical to the first, except that Nedd attaches additional documents to her second Response.

with her previous legal counsel regarding the termination grievance; and 5) a letter signed by Anthony Peterson in February of 2022 complaining of "Low Staff Moral" and a hostile work environment among District bus drivers. Resp. (ECF No. 25). The District replied to Nedd's Responses, arguing that the Court should deem all of Nedd's claims abandoned since the Responses "do[] not substantively respond to or address any of the legal arguments or defenses in the Motion [to Dismiss]." The District's Motion is ripe for determination.

## Legal Standards and Analysis

To survive the District's Rule 12(b)(6) motion, Nedd's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550

U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). And "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Ultimately, where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

When applying the plausibility standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). But a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the [motion to dismiss] that are central to the claim and referenced by the complaint." *Smith v. Buffalo Wild Wings,* 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Inclusive Communities Project, Inc. v. Heartland Cmty. Ass 'n, Inc.,* 399 F. Supp. 3d 657, 665 (N.D. Tex. 2019) (citing *Spivey*, 197 F.3d at 774) ("In ruling on [a Rule 12(b)(6)] motion, the court cannot look beyond the pleadings."), *aff 'd,* 824 F. App'x 210 (5th Cir.

2020).

Courts generally hold *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). However, "despite [the] general willingness to construe *pro se* filings liberally," courts "still require *pro se* parties to fundamentally abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), *as revised* (Sept. 18, 2014) (cleaned up). Therefore, a *pro se* plaintiff is not excused from the requirements to "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief . . . ." *Id.* (citations omitted).

I.    The Court should dismiss Nedd's TCHRA claims under Rule 12(b)(6) for failure to exhaust her administrative remedies.

Before filing suit in federal court, claimants under TCHRA must "file a complaint with the Texas Workforce Commission civil rights division (TWC) or the Equal Employment Opportunity Commission (EEOC) not later than the 180th day after the date an allegedly unlawful employment practice occurs." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502–03 (Tex. 2012); *see also* Tex. Labor Code § 21.202. "A plaintiff's *pro se* status does not . . . turn this requirement into a suggestion." *Smith v. Gen. Motors LLC*, 2023 WL 5986568, at *2 (N.D. Tex. Aug. 28, 2023), report and recommendation adopted, 2023 WL 5986461 (N.D. Tex. Sept. 14, 2023).

"[T]he 180–day limitations period in the TCHRA begins 'when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition.'" *Prairie View A & M*, 381 S.W.3d at 509 (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)). Because the 180-day filing requirement is "mandatory but not jurisdictional[,]" *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 554 (5th Cir. 2020), courts properly dismiss claims for failure to file within the limitations period under Rule 12(b)(6). *See, e.g., id.* (affirming district court dismissing with prejudice under 12(b)(6) where plaintiff filed beyond 180-day period); *Trevino v. Mouser Elecs.*, 2023 WL 3984668, at *3 (N.D. Tex. May 11, 2023), (Cureton, J.), report and recommendation adopted, 2023 WL 3984840 (N.D. Tex. June 13, 2023) (dismissing under 12(b)(6) since "Plaintiff filed her charge with the TWC (and the EEOC) more than 180 days after Plaintiff was terminated").

Here, Nedd alleges that she was "verbally terminated" on January 27, 2022, when the District's Human Resources coordinator contacted her to reveal the District's intention to fire her if she did not resign. Am. Compl. ¶¶ 3, 37 (ECF No. 16). Thus, January 27 is the date on which TCHRA's 180-day limitations period began to run. While Nedd alleges she was "formally terminated" on February 16, the call on January 27 "informed [her] of the allegedly discriminatory employment decision." *Prairie View A & M*, 381 S.W.3d at 509; *see also Specialty Retailers, Inc.*, 933 S.W.2d at 493

(plaintiff's TCHRA claim was untimely when filed more than 180 days after being told she would be terminated if she did not return to work). Accordingly, as a prerequisite to filing federal suit, Nedd was required to file a complaint with the Texas Workforce Commission or the EEOC by June 26, 2022. Instead, she filed her charge on August 29, 2022—more than 60 days late.

Moreover, even if the limitations period did not begin to run until Nedd was "formally terminated" on February 16, 2022, she would have been required to file by August 15, 2022. Because Nedd waited until August 29, she filed two weeks late. Thus, Nedd's claims under TCHRA are time-barred and should be dismissed with prejudice under Rule 12(b)(6). *See Hinkley*, 968 F.3d at 554 (dismissals for failure to file within 180-day limitations period "are ordinarily with prejudice").

II.    The Court should dismiss Nedd's Title VII, TCHRA, and ADEA retaliation claims under Rule 12(b)(6) for failure to exhaust administrative remedies, or alternatively, for failure to state a claim.

*A. Failure to properly exhaust administrative remedies*

In her Amended Complaint, Nedd alleges she was terminated "in retaliation for [her] internal reporting of student and employee safety issues according to the [District's] Policy." Am. Compl. ¶ 3 (ECF No. 16). Liberally construing her *pro se* Complaint, Nedd attempts to assert retaliation claims under Title VII, the TCHRA, and the ADEA. *See* 42 U.S.C. § 2000e-3; Tex.

Labor Code § 21.055; 29 U.S.C. § 623(d).

Exhausting administrative remedies is a mandatory prerequisite to filing suit under Title VII, the TCHRA, and the ADEA. *See Jones v. Beacon Health Options, Inc.*, 2023 WL 3772806, at *3 (N.D. Tex. May 22, 2023) (citing *Taylor*, 296 F.3d at 378-79) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.")); *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 207 (5th Cir. 2015) (unpublished) ("Under Title VII, the ADEA, and the ADA, a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court."); *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) ("Under [TCHRA], a Texas plaintiff must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission or the Texas Workforce Commission.").

To exhaust administrative remedies, a plaintiff must file "a timely charge with the EEOC (Equal Employment Opportunity Commission), or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-5(e)(1)). Then, the plaintiff must file suit within the time permitted after receiving a notice of a right to sue. *See Taylor,* 296 F.3d at 378–79.

Ultimately, "the scope of a subsequent judicial complaint is limited to

the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge.'" *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 (N.D. Tex. 2011) (Ramirez, J.) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

Nedd's retaliation claims exceed the scope of any EEOC or TWC investigation which can reasonably be expected to grow out of her charge. She does not mention retaliation in her charge. And while that omission alone is not fatal to bringing retaliation claims in a later suit, the factual allegations in the narrative of the charge are not sufficient to put any investigator on notice of a retaliation claim. *See Manning v. Chevron Chem. Co., L.L.C.*, 332 F.3d 874, 879 (5th Cir. 2003) ("the crucial element of a charge of discrimination is the factual statement contained therein").

Nedd's charge speaks only to her termination, her allegation that she performed her work satisfactorily prior to termination, and her claims that her termination was therefore an act of discrimination based on her age and race. *See* Orig. Compl. at 5 (ECF No. 3). Her charge does not identify or imply any protected activity that she engaged in prior to her termination or other retaliation. And she does not mention her internal reports prior to her

termination that serve as the basis for her retaliation claims in her Amended Complaint. Accordingly, her retaliation claims exceed the reasonable scope of her charge. *See King*, 809 F. Supp. 2d at 580 (dismissing retaliation claim where plaintiff "only checked the box for race discrimination on her EEOC charge, and failed to make any allegations related to age discrimination, gender discrimination, or retaliation"); *Horton v. CCA Properties of Am., LLC*, 2013 WL 2248033, at *6 (5th Cir. May 8, 2013) (unpublished) (affirming district court dismissing retaliation claim where plaintiff "did not check the box for retaliation in his EEOC charge, assert that he was demoted or fired as retaliation, or assert having taken any actions that would have provoked retaliation").

Thus, Nedd's Title VII, TCHRA, and ADEA retaliation claims should be dismissed without prejudice for failure to exhaust administrative remedies. *See Martin K. Eby Const. Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 n. 5 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't,* 127 F.3d 470, 478 (5th Cir. 1997); *Crawford v. Tex. Army Nat'l Guard,* 794 F.2d 1034, 1035, 1037 (5th Cir. 1986) ("When a district court dismisses a claim under Rule 12(b)(6) for failure to exhaust administrative remedies, the dismissal is without prejudice to the claimant's right to return to court after it has exhausted its administrative remedies.")).

### B.  Failure to state a claim

"To state a *prima facie* case of retaliation under the ADEA, Title VII,

and TCHRA, a plaintiff must show: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse action." *Boudreau v. Nokia of Am. Corp.*, 2020 WL 7426155, at *6 (N.D. Tex. Dec. 18, 2020) (Brown, J.) (citing *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (citation omitted) (ADEA); *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (Title VII); *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (TCHRA)). While "a plaintiff is not required to plead the *prima facie* case of retaliation at the motion to dismiss stage, [s]he must plead sufficient facts on all of 'the ultimate elements' of a retaliation claim to make [her] case plausible." *Boyd v. Dall. Area Rapid Transit*, 2018 WL 7265377, at *6 (N.D. Tex. Dec. 31, 2018) (Ramirez, J.), *adopted by* 2019 WL 350165 (N.D. Tex. Jan. 29, 2019).

Nedd fails to plausibly allege that she engaged in a protected activity. "An individual engages in a protected activity [under Title VII, the TCHRA, or the ADEA] if she: (1) opposes an employment practice made unlawful [by those statutes], or (2) makes a charge, testifies, assists, or participates in a related investigation, proceeding, or hearing." *Boudreau*, 2020 WL 7426155, at *7 (citing *Byers v. The Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000)). Nedd alleges she was terminated in retaliation for her internal reporting regarding student and employee safety and compliance with the District's COVID-19 policy. Am Compl. ¶ 3 (ECF No.

16). But her internal reports prior to her termination, including her School Bus Safety Reports and her written letters to supervisors, do not oppose an employment practice made unlawful by Title VII, the TCHRA, or the ADEA—namely, discrimination based on protected class status. And while "[m]agic words are not required, [ ] protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010). Nedd did not mention any alleged race or age discrimination—or for that matter, her age or race at all—in her internal reports. *See generally* Am. Compl., Ex. B (ECF No. 16) (October 21 Safety Report); Am. Compl., Ex. E (ECF No. 16) (November 9 Safety Report); Am. Compl., Ex. F (ECF No. 16); Am. Compl., Ex. J (ECF No. 16).

Her reports explain her perspective on the October 21st and November 9th incidents and portray her dissatisfaction with the District's compliance with its COVID-19 policy. Compliance with an internal COVID-19 policy is not protected by Title VII, the TCHRA, or the ADEA; Nedd's reporting concerning such compliance is not protected activity sufficient to support a claim of retaliation. *See Brown*, 406 F. App'x at 840 ("Because unfair work distribution, unpaid overtime, and selective enforcement of a lunch policy, without more, are not prohibited by Title VII, plaintiff's opposition to these practices was not protected by Title VII.").

Accordingly, Nedd fails to plausibly allege a prima facie case of

16

retaliation under Title VII, the TCHRA, or the ADEA.

> III.  The Court should dismiss Nedd's Title VII and TCHRA race discrimination claims under Rule 12(b)(6) for failure to state a claim.

Employment discrimination claims brought under Title VII and the TCHRA are evaluated under the same analytical framework. *See Evans v. City of Hou.*, 246 F.3d 344, 349 (5th Cir. 2001); *Hoang v. Microsemi Corp.*, 2023 WL 2346244, at *2 (5th Cir. Mar. 3, 2023) (unpublished); *see also* Tex. Labor Code § 21.001 (purposes of chapter include to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964). Accordingly, to adequately plead her discrimination claims, Nedd must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [her] case plausible." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)).[4] "[T]here are two

---

[4] Because Nedd has not alleged direct evidence of race discrimination, the Court would eventually evaluate her claims under the familiar burden-shifting framework set out in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Thus, Nedd would ultimately have to make out a prima facie case of race discrimination by showing that she: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021).

But "a plaintiff need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citing *Raj v. La. State Univ.*, 714 F.3d 322,

ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Cicalese*, 924 F.3d at 767 (citing *Raj*, 714 F.3d at 331).

In her Amended Complaint, Nedd alleges that the District terminated her because of her race. Am. Compl. ¶¶ 74, 75 (ECF No. 16). But she does not add sufficient factual allegations to her bare recitation of the ultimate elements. Specifically, she offers no more than an unadorned conclusion that her termination was due to her race. For example, she does not allege that the District was motivated by racial bias against African Americans. *See Cicalese*, 924 F.3d at 768 ("While a close call, we conclude that [plaintiffs]—in claiming [defendant's] various actions against them were motivated by anti-Italian bias—alleged sufficient facts [to state a nationality-based discrimination claim]."). She does not allege the race of any of the persons involved in her termination or other employees who were treated more favorably than her. Nedd only alleges that certain "younger" bus drivers were treated more favorably by management after allegedly similar incidents. Am. Compl. ¶¶ 2, 39, 43 (ECF No. 16).

While Nedd does not have to make a prima facie showing of race

---

331 (5th Cir. 2013)). Indeed, "[a] district court therefore errs by requiring 'a showing of each prong of the prima facie test for disparate treatment at the pleading stage[.]'" *Id.* (citing *Raj*, 714 F.3d at 331). At the same time, the Fifth Circuit has explained that even at the 12(b)(6) stage, "it can be helpful to reference the *McDonnell Douglas* framework." *Chhim*, 836 F.3d at 470.

discrimination at this stage, and the Court would err to "subject[] [her] allegations to a rigorous factual or evidentiary analysis[]," *Cicalese*, 924 F.3d at 767, Nedd still must offer sufficient factual allegations to "nudge" her claim that the District terminated her *because of* her race "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Nedd fails to offer any facts to support a plausible claim that she was terminated because of her race.

Accordingly, Nedd fails to state a claim for race-based discrimination under either Title VII or TCHRA.

IV.   The Court should dismiss Nedd's TWA claims under Rule 12(b)(6) for failure to state a claim.

The Texas Whistleblower Act mandates that "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code § 554.002. Accordingly, "to prevail under the [TWA], a plaintiff must demonstrate: 1) [s]he is a public employee; 2) [s]he acted in good faith in making a report; 3) the report involved a violation of law by an agency or employee; 4) the report was made to an appropriate law enforcement authority; and 5) [s]he suffered retaliation." *Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003) (citing *Duvall v. Tex. Dep't of Human*

*Services*, 82 S.W.3d 474, 478 (Tex. App.—Austin 2002, no pet.)).

Here, Nedd does not sufficiently allege that she reported a violation of "law" within the meaning of the TWA. Rather, she alleges that she reported lack of compliance with the District's internal COVID-19 face covering policy. As evidence of the District's policy, she attaches to her Amended Complaint a copy of an email purportedly sent by the District to staff explaining its "Covid Protocols." Am. Compl., Ex. A (ECF No. 16). The email lists "face coverings required by employees and students" as one of the District's protocols. *Id*. But the TWA defines "law" to include only: "(A) a state or federal statute; (B) an ordinance of a local governmental entity; or (C) a rule adopted under a statute or ordinance." Tex. Gov't Code § 554.001(1). "Other complaints and grievances, including alleged violations of an agency's *internal procedures and policies*, will not support a claim." *Mullins v. Dallas Indep. Sch. Dist.*, 357 S.W.3d 182, 188 (Tex. App. —Dallas 2012, pet. denied) (emphasis added). Nedd does not plead any facts to support that the District's "Covid Protocols" were adopted under a statute, rule, or ordinance. Thus, Nedd fails to sufficiently plead a claim under the TWA. *See Coll. of the Mainland v. Meneke*, 420 S.W.3d 865, 871 (Tex. App.— Houston [14th Dist.] 2014, no pet.) (when plaintiff provides no basis to conclude policies were adopted under a statute, "reliance on internal administrative policies cannot serve as the basis for a viable whistleblower claim").

Further, Nedd does not plausibly allege that she reported a violation of law to an appropriate law enforcement authority. Nedd alleges that she engaged in "internal reporting" through submitting DISD School Bus Safety Reports and emails to her supervisors within the District. But an authority is an appropriate law enforcement authority within the meaning of the TWA only if "the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." Tex. Gov't Code § 554.002(b). The Texas Supreme Court has further explained what constitutes an appropriate law enforcement authority:

> [P]urely internal reports untethered to the [Texas Whistleblower] Act's undeniable focus on law enforcement—those who either make the law or pursue those who break the law—fall short . . . . "[F]or an entity to constitute an appropriate law-enforcement authority under the [Whistleblower] Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status." Accordingly, [the Plaintiff] was required to have an objective good faith belief that he was reporting violations of law . . . to an entity that could have enforced, investigated, or prosecuted similar violations against third parties—not just an entity that can internally discipline its own employees for an alleged violation.

*Univ. of Hous. v. Barth,* 403 S.W.3d 851, 857 (Tex. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello,* 398

S.W.3d 680, 682 (Tex. 2013)) (citations omitted).

Nedd does not allege that any of the supervisors to whom she submitted internal reports have the authority to enforce, investigate, or prosecute violations of the District's COVID-19 protocols against third parties outside of DISD. Consequently, she fails to plausibly plead that she made a report to a law enforcement authority within the meaning of the TWA. *See Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (in suit against school district, "complaints to the school board, superintendents, and internal auditor were not good-faith complaints of a violation of law to a 'law enforcement authority' under the Whistleblower Act[,] . . . [since] [t]here is no evidence that these officials had authority to enforce the allegedly violated laws outside of the institution itself, against third parties generally.").

### Opportunity to Amend

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to

amend her complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. However, leave to amend is not automatic and may be refused where it would be futile. *See Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020) (citing *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)).

The Court should not grant Nedd leave to amend. Nedd has been given sufficient opportunity to state a claim—she filed this Amended Complaint in response to the District's first Motion to Dismiss, but has still been unable to overcome the deficiencies in her pleadings, even after the District pointed them out. Nedd also responded to the District's Partial Motion to Dismiss. But she did not attempt to refute or even address any of the District's legal arguments for dismissal. She simply stressed her general disagreement with the District's Motion and "pray[ed] that the courts will move forward with [her] lawsuit[.]" Resp. 1 (ECF No. 24); Resp. 1 (ECF No. 25).

It thus appears that Nedd has alleged her best case, and no further opportunity to amend her complaint is warranted.

## Recommendation

The Court should GRANT the District's Partial Motion to Dismiss (ECF No. 20) and DISMISS all of Nedd's claims under the Texas Whistleblower Act, Title VII, and Chapter 21 of the Texas Labor Code, as well as her retaliation claim under the Age Discrimination in Employment Act.

The Court should allow Nedd to proceed on her claim under the Age Discrimination in Employment Act for age-based discrimination.

**SO RECOMMENDED**.

February 13, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).